UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OLDEN MINNICK,<br><br>Defendant. | Criminal Action No. TDC-14-0554 |

**MEMORANDUM ORDER**

Pending before the Court is Defendant Olden Minnick's Motion for Post Trial Discovery, ECF No. 304. In the Motion, Minnick seeks disclosure of (1) unredacted interview reports relating to the testifying cooperating witness ("CW"); and (2) the investigative file relating to Kittrell Parks, an alleged co-conspirator of Minnick.

**DISCUSSION**

A defendant is entitled to disclosure of evidence in the possession of the government that is "both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). When a defendant cannot know specifically whether certain information meets this standard, the defendant needs only make "some plausible showing" that the information would be "material and favorable" to the defense. *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995). Upon such a showing, the material must be submitted to the trial court for *in camera* review to determine whether it meets this standard and thus must be disclosed to the defense.

In *Ritchie*, the defendant sought access to the child protective services agency file of his daughter, who was the victim of his alleged sexual assault and the primary witness at trial, because he believed it might contain the names of favorable witnesses or other exculpatory

evidence. *Ritchie*, 480 U.S. at 43-44. Based on this showing, the court held that *in camera* review of the file was required. *Id.* at 58. Likewise, in *Love*, the United States Court of Appeals for the Fourth Circuit held that a defendant charged with rape of a minor was entitled to *in camera* review of medical and mental health records relating to the victim, including records from facilities where the victim had been treated by testifying medical personnel. *Love*, 57 F.3d at 1315. In *United States v. King*, 628 F.3d 693 (4th Cir. 2011), the court held that where the "entire defense" was that drugs and firearms seized from the defendant's apartment belonged to his roommate, the district court was required to conduct *in camera* review of the grand jury testimony of the roommate. *Id.* at 703-04.

In contrast, the Fourth Circuit has held that *in camera* review of a presentence report for exculpatory material is not required unless the defendant "has first clearly specified the information contained in the report that he expects will reveal exculpatory or impeachment evidence" because "[t]he adversary system does not permit either party to 'engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents.'" *United States v. Trevino*, 89 F.3d 187, 192 (4th Cir. 1996) (quoting *United States v. Zolin*, 491 U.S. 554, 571 (1989)).

I. **CW Interview Reports**

The CW testified at trial that he arranged to have heroin from Mexico shipped through Texas to Sean Wilson in Maryland. In recorded conversations with Wilson, the CW learned that Wilson's main distributor of this heroin, known as "Big O," had surgery and had his home burglarized. The CW never learned the actual name of Wilson's distributor, never met him, and never heard of Olden Minnick. In recorded conversations between Wilson and Minnick, however, Minnick told Wilson that he had had surgery and that his home had been burglarized.

2

On cross examination, the CW acknowledged that when interviewed by investigators, he was shown multiple photographs of alleged co-conspirators of Wilson, but he was never shown a photograph of Minnick.

Prior to trial, the Government produced to the defense redacted versions of DEA-6 interview reports of the CW. Minnick now seeks disclosure or *in camera* review of the unredacted reports, based on the claim that they may contain exculpatory information. Minnick argues that the unredacted reports "would show the breadth" of the CW's knowledge about Wilson's organization, such that if they revealed that he had significant knowledge of the drug organization while not knowing Minnick, it would "undercut" the claims at trial that Minnick was involved with Wilson. Mot. at 3. Minnick also claims that the unredacted reports would show the extent of the Government's investigation of Wilson and its failure to connect Minnick to Wilson's organization.

Minnick's argument is flawed because at trial the CW did not claim to know Minnick. He freely acknowledged that he had never heard of Minnick and did not know the name of Wilson's heroin distributor. On cross examination, the CW acknowledged that during his interviews with law enforcement, he was never shown a photograph of Minnick. Thus, to the extent that the unredacted reports would reveal that the Government had not directly linked Minnick to Wilson, that it did not question the CW about Minnick, and that the CW had no knowledge of Minnick, those points had already been firmly established by the defense during the trial.

Nevertheless, because Minnick's request is limited to the unredacted versions of the CW interview reports already produced by the Government, and the request relates to prior statements of a testifying witness, the Court will, out of an abundance of caution, require the

Case 8:14-cr-00554-TDC Document 320 Filed 10/27/16 Page 4 of 5

reports to be produced for *in camera* review. *See Ritchie*, 480 U.S. at 43-44 (requiring *in camera* review of records relating to a testifying victim); *Love*, 57 F.3d at 1315 (same). As the court in *King* concluded, the request for "one particular document" pertaining to one grand jury witness can be granted "without embarking on a 'groundless fishing expedition[].'" *King*, 628 F.3d at 703 (quoting *United States v. Trevino*, 89 F.3d 187, 192 (4th Cir. 1996)). Accordingly, the Motion is granted in part in that the Government is ordered to produce the unredacted CW interview reports for *in camera* review.

## II. The Parks Investigative File

At trial, the evidence established that Kittrell Parks sold heroin to an undercover agent on June 4, 2014 and arranged for another sale to an undercover agent on June 25, 2014. He also was recorded in several phone conversations with Minnick, was observed meeting with Minnick in public places, and visited 815 Glacier Avenue, a residence owned by Minnick that was used as a drug stash house.

In seeking disclosure or *in camera* review of the Parks investigative file, Minnick asserts that it must contain favorable information revealing a "major flaw" in the prosecution of Parks, because Parks had engaged in hand-to-hand drug sales with cooperating witnesses on nine occasions prior to June 2014, yet he has not been arrested or charged to date. Mot. at 5. The Government, however, represented that the Parks investigation, which is overseen out of Washington, D.C., remained ongoing at least as of the time of the trial in this case.

Minnick's claim that the Parks investigative file will contain exculpatory evidence is entirely speculative. Minnick offers no specific facts or legal authority in support of his theory that the file will reveal government misconduct that could impact his case. Unlike the CW, Parks did not testify at trial. Minnick identifies no specific document or documents to be

4

reviewed. To grant the request for *in camera* review of the Parks investigation materials would thus sanction a "groundless fishing expedition[]" by Minnick, with the district court as his agent. *Trevino*, 89 F.3d at 192. Where Minnick has made no "plausible showing" that the contents of the investigative file would be "material and favorable" to the defense, the Court denies the request for disclosure or *in camera* review of the Parks investigation file. *Love*, 57 F.3d at 1313.

## CONCLUSION

For the foregoing reasons, the Motion for Post Trial Discovery, ECF No. 304, is GRANTED IN PART and DENIED IN PART. The Motion is granted to the extent that the Court ORDERS that the unredacted CW interview reports be filed with the Court under seal for *in camera* review and for purposes of the appellate record. Such materials shall be submitted, with the redacted portions identified for the Court, within **seven (7) days** of the date of this Order. The Court will defer a final ruling on the request for disclosure of the reports to Minnick until after it reviews the submitted materials. To the extent the Motion seeks discovery or *in camera* review of the investigative file relating to Kittrell Parks, that request is denied.

Date: October 27, 2016

THEODORE D. CHUANG
United States District Judge